AUTO-OWNERS INSURANCE COMPANY v EMPLOYERS
INSURANCE OF WAUSAU

Docket Nos. 46064, 48269. Submitted October 8, 1980, at Detroit.—
Decided February 17, 1981.

Joe Everett was injured by the explosion of his automobile battery during servicing. Auto-Owners Insurance Company, his automobile insurer, paid him benefits under his no-fault insurance policy. Everett subsequently brought an action based on a theory of products liability against Globe-Union Inc., the manufacturer of the battery, and Sears, Roebuck and Co., the distributor of the battery. Auto-Owners notified Globe-Union, Sears, and Employers Insurance of Wausau, their insurance carrier, of its right both for reimbursement of the benefits paid to Everett and to a lien on any proceeds recovered in Everett's suit. Following a settlement in Everett's suit, Auto-Owners brought an action against Sears, Globe-Union, and Employers, Levenson, Disner, Ruby and Fruitman, P.C., and Sidney Ruby, Everett's attorneys in his suit against Globe-Union and Sears, Joe Everett, and Inez Everett alleging wilful and intentional breach of their duties to reimburse Auto-Owners. Summary judgment was entered for Sears, Globe-Union, and Employers, Wayne Circuit Court, Theodore R. Bohn, J., on June 18, 1979, and for the Levenson firm, Wayne Circuit Court, Joseph Burtell, J., on October 18, 1979. Auto-Owners appeals both judgments. The claims were consolidated on appeal by the Court of Appeals. *Held:*

The settlement in the products liability action did not compensate Everett for noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle, but for damages for liability arising without the scope of tort liability covered by

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 7A Am Jur 2d, Automobile Insurance § 443.
No-fault: right of insurer to reimbursement out of recovery against tortfeasor. 69 ALR3d 830.
[1-3] 7 Am Jur 2d (Rev), Automobile Insurance § 348.
Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
[2] 7 Am Jur 2d (Rev), Automobile Insurance § 349.

the no-fault act. Defendants, therefore, had no duty to reimburse plaintiff. Nor did plaintiff have a lien on the settlement. Summary judgments were properly entered by the trial court.
Affirmed.

1. INSURANCE — AUTOMOBILES — NO-FAULT ACT — TORT CLAIMS — NO-FAULT BENEFITS — STATUTES.

The amount of personal injury protection insurance benefits under the no-fault act shall not be diminished by the value of a claim in tort based on the accidental bodily injury for which the injured party is entitled to the benefits; however, following recovery upon a tort claim a subtraction shall be made, and where benefits have already been received the claimant shall reimburse the insurer with a sum equal to the benefits received, but only where and to the extent that the tort recovery includes damages for losses for which such benefits were paid (MCL 500.3116[1]; MSA 24.13116[1]).

2. INSURANCE — AUTOMOBILES — NO-FAULT ACT — TORT LIABILITY — STATUTES.

A person remains subject to tort liability under the no-fault act for noneconomic loss caused by his ownership, maintenance, or use of a motor vehicle only where the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement (MCL 500.3135; MSA 24.13135).

3. INSURANCE — AUTOMOBILES — NO-FAULT ACT — DRAMSHOP ACT — PRODUCTS LIABILITY — TORT LIABILITY — STATUTES.

The no-fault act comprehensively covers only tort liability arising out of the ownership, maintenance, or use of motor vehicles; thus, an insurer is not entitled to reimbursement for personal protection insurance benefits paid to an injured party upon that party's recovery for a defendant's tort liability arising under the dramshop act or under a products-liability theory (MCL 436.22, 500.3116, 500.3135; MSA 18.993, 24.13116, 24.13135).

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Michael M. Wachsberg),* for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Charles W. Fisher),* for defendants Employers Insurance of Wausau, Globe-Union, Inc., and Sears Roebuck and Co.

*Collins & Einhorn, P.C.* (by *Clayton F. Farrell* and *Dale J. McLellan),* for defendant Levenson firm.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and MACKENZIE, JJ.

D. C. RILEY, P.J. On April 7, 1975, Joe Everett suffered injuries when his automobile battery exploded during servicing. Plaintiff, Everett's automobile insurer, paid Everett $16,013.72 for his injuries pursuant to his no-fault insurance policy. Thereafter, Mr. Everett retained the law firm of Levenson, Disner, Ruby and Fruitman, P.C. (hereinafter Levenson firm), to prosecute a products-liability action against both the manufacturer and distributor of the battery, Globe-Union Inc. and Sears, Roebuck and Co., respectively. Plaintiff then notified both Globe-Union and Sears as well as their insurance carrier, Employers Insurance of Wausau, of its right to reimbursement for benefits paid to Everett and its right to a lien on the proceeds of any subsequent suit by Everett arising out of the explosion.

Everett subsequently commenced suit against Globe-Union and Sears in Federal district court. The record in the instant case does not indicate whether Everett claimed economic losses as well as noneconomic losses. In any event, the suit was settled for $115,000, and Everett signed a release and discharge in favor of Sears and Globe-Union.[1]

[1] When the settlement was placed on the record before the Honorable Robert D. DeMascio, the following exchange took place:

*"[ATTORNEY FOR SEARS and ROEBUCK]* I would like the record to reflect that it has been discussed and the defendants will be able to obtain a release and indemnification specifically signed by both parties, including Mrs. Everett in this matter. Any objections to that?

*"[ATTORNEY FOR MR. EVERETT]* No objections at all, your Honor.

"I would like to ask [attorney for Sears and Roebuck] *if we can*

On July 7, 1978, plaintiff initiated the present action, alleging that defendants owed a duty to reimburse and that the duty was wilfully and intentionally breached. On June 18, 1979, the trial court entered an order granting summary judgment on behalf of Sears, Globe-Union, and Employers Insurance of Wausau. An identical judgment on behalf of the Levenson firm and Sidney Ruby was entered on October 18, 1979. Plaintiff appeals both judgments as a matter of right. The claims have been consolidated.

The issue in this case is whether the no-fault act[2] permits reimbursement to carriers for personal injury protection benefits paid to an injured insured who later sues a responsible third party in a products-liability suit.

At the time of the incident giving rise to this lawsuit, MCL 500.3116(1); MSA 24.13116(1), the reimbursement provision of the no-fault act, provided in pertinent part as follows:

"(1) A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury. However, after recovery is realized upon a tort claim, a subtraction shall be made to the extent of the recovery, exclusive of reasonable attorneys' fees and

agree that this settlement will cover noneconomic benefits in terms of what the Court can enter by way of a consent judgment in this matter.

"THE COURT: It is quite clear to the Court here that what Mr. Everett is suing for is pain and suffering. And the settlement as discussed with the Court was the settlement to reimburse or compensate Mr. Everett for pain and suffering.

"[ATTORNEY FOR MR. EVERETT]: Past, present and future.

"THE COURT: Yes.

"[ATTORNEY FOR SEARS and ROEBUCK] Additionally, of course, we're saying that if there would be any additional counts or contentions not covered by that statement, that we would want a dismissal with prejudice as to any possible claim." (Emphasis added.)

[2] MCL 500.3101 et seq.; MSA 24.13101 et seq.

other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received * * *."

Plaintiff bases its right to reimbursement on this provision.

In *Workman v Detroit Automobile Inter-Ins Exchange,* 404 Mich 477; 274 NW2d 373 (1979), the Supreme Court, facing an issue similar to the one before us, interpreted § 3116. Applying rules of statutory construction, the Court found that it was necessary to construe § 3116 in light of the other provisions of the no-fault act, particularly MCL 500.3135; MSA 24.13135 which provides in pertinent part:

"(1) A person remains subject to tort liability for noneconomic loss caused by *his ownership, maintenance or use of a motor vehicle* only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as to:

* * *

"(b) Damages for noneconomic loss as provided and limited in subsection (1)." (Emphasis added.)

Read literally, §§ 3135 and 3116 of the act conflict since, although the former provides a limited tort remedy, the latter provides that any recovery under § 3135 will be taken away. Because such a result would lead to absurd results, the Court, in an attempt to harmonize the two provisions, held that § 3116 does not allow unconditional reim-

bursement to no-fault insurance carriers out of tort recoveries from third parties. The Court then specified the extent to which insurance carriers could be reimbursed: "[A]n insurance carrier paying personal injury protection benefits is entitled to reimbursement from the tort recovery of a person injured as a result of a motor vehicle accident only if, and to the extent that, the tort recovery includes damages for losses for which personal injury protection benefits were paid." *Workman, supra,* 510. Significantly, the Court reasoned that its interpretation of the two provisions would effectuate their essential purpose, namely: "to prevent *double recovery* of economic loss by those persons who retain their right to sue in tort for economic loss under the act." *Id.*

In the instant case, plaintiff concedes that it was not permitted to be reimbursed from that part of the products-liability recovery which represented plaintiff's noneconomic losses. It argues, rather, that the portion of the products-liability recovery representing economic losses for which plaintiff is liable to its insured under the no-fault act should be subject to its right to reimbursement. Employers Insurance, on the other hand, contends that the settlement placed on the record in the underlying products-liability action represented only noneconomic recovery and that plaintiff, therefore, has no right to reimbursement.

This Court faced a nearly identical situation in *Schwark v Lilly,* 91 Mich App 189; 283 NW2d 684 (1979). In that case, plaintiff, together with four of her children, was injured in an automobile collision. The defendants consisted of Lilly, the other driver, as well as Duane Wiltse, d/b/a The Lazy Lounge, VFW Post 5319, and State Farm Mutual Automobile Insurance Company. The alleged lia-

bility of Wiltse and the VFW Post was premised upon violation of the dramshop act. Plaintiffs settled with all of the defendants except State Farm. State Farm appealed the trial court's ruling that it was not entitled to reimbursement for personal protection insurance benefits from plaintiff's recovery from the dramshop defendants.

Relying principally on the Supreme Court's opinion in *Workman, supra,* the *Schwark* Court upheld the trial court's ruling and denied State Farm reimbursement, holding that § 3135 does not eliminate tort liability arising out of the dramshop act, MCL 436.22; MSA 18.993. The Court further held that:

"Section 3116 must be construed in light of and together with § 3135. In the latter section the Legislature discusses only 'tort liability arising out of the ownership, maintenance or use * * * of a motor vehicle'. Section 3135(2). The liability of the dramshop defendants did not arise out of the ownership, maintenance or use of an automobile. Instead their liability arose from their alleged 'unlawful selling, giving or furnishing * * * intoxicating liquor' to 'a visibly intoxicated person'. MCL 436.22.

"In enacting the no-fault act the Legislature addressed only one type of tort liability. The act comprehensively covers only tort liability arising out of the ownership, maintenance or use of motor vehicles. To extend its provisions to liability arising outside its intended scope would circumvent the legislative process. We rule, therefore, that the defendant is not entitled to reimbursement for personal protection insurance benefits from plaintiffs' recovery from the dramshop defendants." *Schwark, supra,* 202-203. (Footnote omitted.)

Although clearly dicta, the Court pointed out in a footnote that:

"Another example of a theory of liability which may be the basis of a claim for damages following a motor vehicle accident is products liability. As is the case with dramshop liability, liability under this theory would not arise out of the ownership, maintenance or use of a motor vehicle." *Id.,* fn 7, 203.

We conclude that the rationale of *Schwark* is equally appropriate in the instant case. The wording of § 3135 makes it unlikely that the Legislature intended to extend the no-fault abolishment of tort liability to products-liability cases. As was true in *Schwark,* Globe-Union and Sears' liability did not arise out of the ownership, maintenance, or use of an automobile. Instead, their liability arose "on account of * * * injury to person or property caused by or resulting from the manufacture, construction, [or] design * * * of a product or a component of a product". MCL 600.2945; MSA 27A.2945. Since we must construe § 3116 in light of § 3135, § 3116 should have no impact on the products-liability recovery, and reimbursement is, therefore, precluded as we are convinced that the settlement placed on the record in Federal district court compensated Everett only for noneconomic damages.

In light of our resolution of the first issue, we hold that the second issue, whether the trial court erred in granting summary judgment in favor of the Levenson firm and Sidney Ruby, is without merit. Plaintiff had no lien on the settlement of the Federal court case and no duty was owed by Sidney Ruby or the Levenson firm.

Affirmed.

No costs, a statutory interpretation being involved.