**AUTOMOBILE CLUB INSURANCE AS-
SOCIATION, Subrogee of Edward J.
Koby, II, Plaintiff–Appellant,**

v.

**Jean Hector LaPOINTE,
Defendant–Appellee.**

**No. 87–1173.**

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 26, 1988.

Decided April 12, 1988.

---

Eric W. Zimostrad, Zimostrad & Zimostrad, P.C., Bay City, Mich., for plaintiff-appellant.

A.T. Lippert, Jr., Smith & Broker, P.C., Gary R. Campbell, Saginaw, Mich., for defendant-appellee.

Before MILBURN and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Automobile Club Insurance Association (Automobile Club), appeals from a grant of summary judgment to the defendant in this subrogation action. The issues presented to the district court for resolution were legal in nature and there were no disputed fact questions. We agree with the resolution of the legal issues made by Judge Churchill and affirm.

**I.**

On August 5, 1983, a Piper Cherokee 180 aircraft owned and operated by defendant, LaPointe, crashed into an automobile owned by Edward J. Koby, II. At the time of the crash, the automobile was being driven by Edward Koby's wife, Gayle Marie, on a public highway adjacent to the Bay City, Michigan, airport. The five Koby children were passengers in the automobile. Gayle Koby and one of the children were killed and the four other children were injured.

Plaintiff was the insurance carrier for the Koby automobile and made certain first-party payments pursuant to the terms of its contract of insurance. Such payments included medical expenses, burial expenses, survivor's benefits, death indemnity benefits and a motor vehicle collision payment for the damaged automobile.

LaPointe is a Canadian citizen and, on December 12, 1983, the Automobile Club initiated contact with a Toronto, Canada, law firm relative to reimbursement for the damage paid out for Koby's *automobile*. Automobile Club had acquired an assignment in writing for the amount of the vehicle damage from Koby on August 17, 1983. This letter was answered on December 30, 1983, by the Canadian law firm of Lane & Associates representing LaPointe, and negotiations commenced. However, on April 12, 1984, Edward Koby commenced suit against LaPointe and, subsequently, Lane & Associates informed Automobile Club that they could not settle with the Automobile Club until the Koby suit was resolved.

On June 5, 1985, Koby settled his suits against LaPointe, a consent judgment was entered in favor of the Koby plaintiffs,[1] and a comprehensive release of all claims was executed. On August 12, 1985, Lane & Associates wrote Automobile Club and said they were still willing to pay the *automobile* damage. Automobile Club sought additional indemnification, however, and instituted this action against LaPointe in state court. LaPointe removed to federal court on September 12, 1986. The defendant responded to the complaint by moving for summary judgment, which motion was granted on February 3, 1987.

---

1. Three lawsuits had been filed by Edward J. Koby, II, involving the various interests of the insured minor plaintiffs, his deceased wife, and his deceased minor daughter.

## II.

■ Under Michigan common law "[a]n insurer, as subrogee of its insured, has no greater rights against the tortfeasor than its insured." *Northern Insurance Co. v. Elliott, Ltd.*, 117 Mich.App. 308, 324, 323 N.W.2d 683 (1982). Since Koby released LaPointe from "any and all claims" that he had, the Automobile Club, as subrogee, had no common law claim against LaPointe.[2] However, the payments which Automobile Club made to Koby were pursuant to Michigan's complex no-fault auto insurance statute and Automobile Club claims a statutory right of indemnity.

■ Michigan's no-fault auto insurance legislation covers the situation of an insured motorist who received first-party benefits and also has a third-party tort claim. The Michigan Motor Vehicle No–Fault Act (the Act) expressly allows an insurance company to obtain a set-off against its insured who collects on a third-party tort claim under certain specific circumstances. The Act also provides for a right of indemnity by the insurance company against the third-party tortfeasor under some circumstances. In relevant part the Act reads:

> (1) A subtraction from personal protection insurance benefits shall not be made because of the value of a claim in tort based on the same accidental bodily injury.
>
> (2) A subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter shall be made only if recovery is realized upon a tort claim arising from an accident occurring outside this state, a tort claim brought within this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101(3) and (4) was

not in effect, or a tort claim brought within this state based on intentionally caused harm to persons or property, and shall be made only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive personal protection insurance benefits. A subtraction shall be made only to the extent of the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. If personal protection insurance benefits have already been received, the claimant shall repay to the insurers out of the recovery a sum equal to the benefits received, but not more than the recovery exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery. The insurer shall have a lien on the recovery to this extent. A recovery by an injured person or his or her estate for loss suffered by the person shall not be subtracted in calculating benefits due a dependent after the death and a recovery by a dependent for loss suffered by the dependent after the death shall not be subtracted in calculating benefits due the injured person.

> (3) A personal protection insurer with a right of reimbursement under subsection (1), if suffering loss from inability to collect reimbursement out of a payment received by a claimant upon a tort claim is entitled to indemnity from a person who, with notice of the insurer's interest, made the payment to the claimant without making the claimant and the insurer joint payees as their interest may appear or without obtaining the insurer's consent to a different method of payment.[3]

Mich.Comp.Laws Ann. § 500.3116(1),(2), and (3) (footnote omitted).

In construing these statutory provisions, the Michigan courts have concluded that a

---

**2.** Apart from the claims under the no-fault statute, we do not address what other claims Automobile Club may have against Koby because that issue is not before us. This includes Automobile Club's argument that they have a contractual right of recovery. To the degree that the contractual right of subrogation conflicts with the statutory right, the latter would control. *State Farm Mut. Auto. Ins. Co. v. Wyant,*

154 Mich.App. 745, 750–51, 398 N.W.2d 517 (1986).

**3.** Arguably, this case could also be resolved in favor of the defendant on the basis of the fact that the only "notice" the defendant received concerned a claim for damage for the automobile.

no-fault insurer is entitled to reimbursement only when the third-party tort claim arose from an out-of-state accident, an uninsured *motor vehicle* driver, or an intentional act. *Auto Club Insurance Ass'n v. Henley*, 130 Mich.App. 767, 344 N.W.2d 363 (1983); *Keys v. Travelers Insurance Co.*, 124 Mich.App. 602, 604, 335 N.W.2d 100 (1983).

Since it is clear that the plane crash here was not an intentional act and did not occur out of state, Automobile Club is left with the argument that the accident here was caused by an uninsured motor vehicle driver. Although the Michigan courts, on occasion, have stretched the definition of "motor vehicles" to include such equipment as golf carts, forklifts, and tractors, they have yet to include flying airplanes and we decline to do so. As the Michigan Supreme Court stated in *Citizens Insurance Co. of America v. Tuttle*, 411 Mich. 536, 552, 309 N.W.2d 174 (1981):

> The no-fault insurer's right to subtraction or reimbursement is limited by § 3116(2) to recoveries from *motorist* tortfeasors or for intentional torts. There is no right to subtraction or reimbursement with respect to a tort recovery from a non-motorist defendant which duplicates personal protection insurance benefits.

411 Mich. at 552, 309 N.W.2d 174 (emphasis in original).

Having concluded that under the circumstances presented here the Automobile Club had no statutory right to reimbursement from its insured, it follows automatically that the provisions of Mich.Comp. Laws Ann. § 500.3116(3) are not applicable as to LaPointe.[4]

AFFIRMED.

**4.** On appeal, defendant also argues that this claim is barred by the applicable one-year statute of limitations contained in the Michigan Motor Vehicle No–Fault Act. Mich.Comp.Laws Ann.§ 500.3146 provides:

> An action by an insurer to enforce its rights of recovery or indemnity under section 3116 may not be commenced later than 1 year after payment has been received by a claimant

upon a tort claim with respect to which the insurer has a right of reimbursement or recovery under section 3116.

Given our disposition of this case, we find it unnecessary to address this argument except to note that Automobile Club seems to argue that there was a concealment of the settlement which could toll the statute of limitations.