417 Mich. 590 (1983)
339 N.W.2d 470
PIONEER STATE MUTUAL INSURANCE COMPANY
v.
ALLSTATE INSURANCE COMPANY
Docket No. 67559, (Calendar No. 15).
Supreme Court of Michigan.
Argued April 6, 1983.
Decided November 7, 1983.
Landman, Luyendyk, Latimer, Clink & Robb (by Stanley J. Stek) for the plaintiffs.
Nelson & Kreuger (by James R. Nelson) for the defendant.
Decided November 7, 1983. Rehearing denied 418 Mich 1202.
CAVANAGH, J.
The parties have stipulated to the facts in this case. Plaintiff Wittenbach was driving his farm tractor along a public road, heading to work in one of his fields, when he was struck from behind by an automobile which was owned and operated by the defendant's insured. At the time of the accident, Wittenbach did not carry no-fault insurance covering his tractor; however, he did have a general farm policy with Pioneer State Mutual Insurance Company.
Pioneer compensated Wittenbach for his losses and then filed a timely claim for property protection benefits with Allstate Insurance Company, pursuant to § 3121 of the no-fault act. MCL 500.3121; MSA 24.13121. Defendant denied the claim, and this suit seeking the foregoing statutory benefits followed. Defendant moved for summary judgment under GCR 1963, 117.2, alleging that the property damage suffered by the plaintiffs was excluded from coverage under § 3123(1)(a) of the act. MCL 500.3123(1)(a); MSA 24.13123(1)(a). The trial court granted the defendant's motion for summary judgment, and the Court of Appeals affirmed that decision. 107 Mich App 261; 309 NW2d 598 (1981). We granted the plaintiffs' application for leave to appeal. 414 Mich 865 (1982).
The issue we are asked to decide is whether the damages sustained by a farm tractor in a motor vehicle accident which occurs while the tractor is *593 being operated upon a public highway are excluded from property protection insurance coverage under § 3123 of the no-fault act. The no-fault act provides for compensation for property damage in the following manner:
"Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125 and 3127." MCL 500.3121(1); MSA 24.13121(1).
Sections 3125 and 3127 are not relevant to this appeal; the heart of this controversy lies in the interpretation of § 3123, which provides in pertinent part:
"(1) Damage to the following kinds of property is excluded from property protection insurance benefits:
"(a) Vehicles and their contents, including trailers, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred." MCL 500.3123(1)(a); MSA 24.13123(1)(a).
Plaintiffs argue that a farm tractor is not a "vehicle" as that term is used in § 3123(1)(a), and therefore property damage to the tractor is recoverable as property protection benefits when arising out of the ownership, operation, maintenance or use of a motor vehicle. To hold otherwise, the plaintiffs argue, would violate the statutory scheme designed to apply only to motor vehicles as defined in § 3101(2)(c) of the act, MCL 500.3101(2)(c); MSA 24.13101(2)(c), or render application of § 3123 a denial of due process and equal *594 protection of the law. Defendant counters that § 3123 specifically defines those vehicles which are excluded from property protection benefits and that a farm tractor clearly falls within that definition.
We must thus determine whether a farm tractor is a vehicle "operated or designed for operation upon a public highway by power other than muscular power". Plaintiffs first argue that the word "vehicle" as used in § 3123(1)(a) should be interpreted to mean "motor vehicle", as that term is defined in § 3101(2)(c) of the act. Plaintiffs argue that if the Legislature had intended the term "vehicle" to refer to a body of tangible property distinct from that referred to where the term "motor vehicle" was used, the terms would have been used with careful differentiation throughout the act. However, since the Legislature used the terms interchangeably in several sections of the act, the plaintiffs argue that the Legislature intended those terms to refer to the same body of tangible property. See MCL 500.3113(a), 500.3114(4); MSA 24.13113(a), 24.13114(4). Plaintiffs also point out that this Court has used the terms synonymously in several of its opinions. See Heard v State Farm Mutual Automobile Ins Co, 414 Mich 139, 150; 324 NW2d 1 (1982), Lee v DAIIE, 412 Mich 505, 509; 315 NW2d 413 (1982), Miller v Auto-Owners Ins Co, 411 Mich 633, 640; 309 NW2d 544 (1981), and Shavers v Attorney General, 402 Mich 554, 630-632; 267 NW2d 72 (1978).
We disagree with the plaintiffs' contention that the Legislature intended the term "vehicle" as used in § 3123(1)(a) to be synonymous with the term "motor vehicle" as defined in § 3101(2)(c). If the Legislature had intended these two terms to be *595 synonymous, there would have been no need to provide a separate definition of the term "vehicle", as found in § 3123(1)(a). Although the term "vehicle" is also used in other provisions of the act, it is not separately defined in those provisions as it is in § 3123(1)(a). Consequently, although the Legislature may have used the term "motor vehicle" and "vehicle" interchangeably in other provisions of the act, the fact that the term "vehicles" in § 3123(1)(a) is accorded a separate definition in order to preclude the application in that section of the more limited term "motor vehicle", as defined in § 3101(2)(c), indicates that the Legislature obviously chose to include a broader class of vehicles within the scope of § 3123(1)(a).
Since we conclude that the term "motor vehicle", as defined in § 3101(2)(c), and the term "vehicle", as defined in § 3123(1)(a), are not synonymous in definition, the term "vehicle" as it is defined in § 3123(1)(a) must be examined independently. To do so, we apply the familiar rules of statutory construction:
"The most important rule, of course, is to discover and give effect to the legislative intent.

* * *
"The next rule is to derive the legislative intention from the actual language used in the statute. * * * If the language used is clear and the meaning of the words chosen is unambiguous, a common-sense reading of the provision will suffice, and no interpretation is necessary." In re Certified Questions, Karl v Bryant Air Conditioning Co, 416 Mich 558, 567; 331 NW2d 456 (1982).
We believe that the language of § 3123(1)(a) is clear and unambiguous. The exclusion in that section applies to vehicles operated or designed for *596 operation on a public highway by power other than muscular power. A farm tractor is a vehicle, see MCL 257.16; MSA 9.1816, and MCL 257.62; MSA 9.1862, operated by power other than muscular power, and in this case the tractor was operated upon a public highway at the time of the accident. We can reach no other conclusion than that a farm tractor falls within the exclusionary provision of § 3123(1)(a); any other result would require us to overlook unambiguous statutory language.
We note, however, that even if we were to accept the plaintiffs' argument that § 3123(1)(a) refers to "motor vehicles" as that term is defined in § 3101(2)(c), a farm tractor would still meet this definition and thereby be excluded from property protection insurance coverage. A "motor vehicle" is defined under § 3101(2)(c) as follows:
"`Motor vehicle' means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped as defined in section 32b of Act No. 300 of the Public Acts of 1949." MCL 500.3101(2)(c); MSA 24.13101(2)(c).
In this case the farm tractor was clearly a vehicle being operated upon a public highway by power other than muscular power at the time of the accident. Additionally, a farm tractor has more than two wheels and is not a motorcycle or a moped. Consequently, even if the vehicles defined in § 3123(1)(a) only include motor vehicles as defined in § 3101(2)(c), Wittenbach's farm tractor would still be excluded from property protection insurance coverage.
Plaintiffs next argue that a determination *597 whether property is classified as a vehicle under § 3123(1)(a) must be based upon the property's design and general pattern of use. Property should not fluctuate from being considered a vehicle under the act in one instance to not being a vehicle under the act in the next simply because of its location; rather, depending upon the property's purposes in design or its general pattern of use, once the property becomes classified as a vehicle it should remain so until its essential or primary purpose and use is changed. Since the primary purpose of a farm tractor is not to operate upon a public highway, plaintiffs assert, it should not be considered a vehicle under § 3123(1)(a) merely because it happens to be located upon a public highway at the particular instant of loss.
We find this argument to be unpersuasive. If the Legislature had intended that property be designated once and for all as a vehicle or not a vehicle under § 3123(1)(a), the Legislature would not have included in the definition of a vehicle that it be one which is operated or designed for operation upon a public highway. These words of qualification clearly establish that property may or may not be a vehicle under this section, depending upon the location of its use.
Plaintiffs next argue that if owners of farm tractors are categorically denied the right to recover property protection insurance benefits for property damage to their tractors arising out of the ownership, operation, maintenance or use of a motor vehicle, then such owners are being denied their rights to equal protection and due process of the law.
The thrust of the plaintiffs' constitutional challenge is twofold. First, the plaintiffs argue that the no-fault act abolishes tort liability for property *598 damages in a motor vehicle accident, yet our interpretation of § 3123(1)(a) would render owners of damaged farm tractors ineligible for benefits under the act, thereby leaving such owners with the sole remedy of recovering from their own first party insurance carrier, if they have chosen to carry such coverage. This statutory scheme for property protection benefits is alleged to bear no reasonable relationship to any permissible legislative objectives. Second, the plaintiffs argue that denying property protection benefits to owners of farm tractors will result in a classification which permits recovery of such benefits for damages to some types of non-stationary property, but not others, a distinction allegedly without a rational basis.
We first note that our interpretation of § 3123(1)(a) does not result in the categorical denial of a farm tractor owner's right to recover property protection insurance benefits. Under that section, the only vehicles which are excluded from property protection insurance coverage are those vehicles which are operated or designed for operation upon a public highway. As both parties note, farm tractors are not designed primarily for operation upon a public highway. Consequently, the owner of a farm tractor would be entitled to recover property protection benefits for damages received when the tractor is properly parked or when it is not being operated upon a public highway.
In Shavers v Attorney General, supra, pp 625-632, this Court held that the no-fault act's property damage protection scheme does not violate the Due Process and Equal Protection Clauses of the Michigan and United States Constitutions. We included in our consideration an analysis of the argument that the act impermissibly abolished the *599 common-law remedy in tort for those who suffered property damages in a motor vehicle accident, and we concluded that since the legislative scheme for property protection benefits bears a reasonable relationship to permissible legislative objectives, the act does not violate due process.
We are not persuaded by the plaintiffs' argument that the legislative purposes for the property protection sections of the act which we found to be legitimate in Shavers should lose such recognition when those sections are applied to farm tractors. One of the primary legislative objectives encompassed within the no-fault scheme of compensation was to ensure that the cost of insurance coverage for vehicles traveling upon public roads would be lower and more equitable by having the cost of insurance premiums calculated on the basis of the value of repair costs to a known vehicle rather than on the potential damage to a vehicle of unknown value. Shavers, p 627. Thus, automobile owners are required to insure their own vehicles for property damage unless they wish to remain unprotected in accidents which are not related to parked vehicles because, under § 3123(1)(a), they would not be entitled to recover property protection benefits from the insurer of the other motor vehicle involved in the accident. Miller v Auto-Owners Ins Co, supra, pp 639-640, fn 1.
It is entirely reasonable for the Legislature to have intended, in order to meet its objective of promoting lower costs for insurance premiums, that all owners of vehicles traveling upon public highways should have to carry their own insurance against property damage or run the risk of having to absorb the damage themselves. If this were not the case, then insurance premiums would have to be higher in order for the insurance *600 carrier to insure against possible damage to unknown vehicles traveling upon public highways, the very situation which the no-fault property damage benefits scheme was designed to prevent. This analysis is equally applicable whether the vehicle traveling along the public road is an automobile or a farm tractor. The legislative objective remains the same, and the means chosen to achieve that objective bear a reasonable relationship to it.
Plaintiffs also argue that our interpretation of § 3123(1)(a) results in a violation of equal protection because two classes of tangible non-stationary property which are not designed to be operated upon public highways are created, and the distinction is alleged to be without a rational basis. Plaintiffs contend that there is no reason to treat farm tractors any differently than such non-stationary property as farm animals or trains.
As we noted in Shavers, supra, p 613, the proper test to use in determining whether a statute comports with either due process or equal protection requirements is whether the legislative classification is rationally related to a legitimate governmental interest. However, we also stated in O'Donnell v State Farm Mutual Automobile Ins Co, 404 Mich 524, 542-543; 273 NW2d 829 (1979), that the responsibility for establishing priorities and drawing lines between alternatives rests with the Legislature, not the judiciary, and that perfection in making classifications is neither possible nor necessary. We pointed out in O'Donnell, p 543, that:
"In short, we do not sit `as a superlegislature to judge the wisdom or desirability of legislative policy determinations'. We sit as a court to determine whether there is a rational basis for the Legislature's judgment. If there is, then that judgment must be sustained".
When allocating the responsibility for property *601 damage, the Legislature certainly could have been justified in concluding that vehicles being operated upon a public highway often share some of the fault for an accident and may well be the cause of their own damage. This would apply both to automobiles and to farm tractors, especially since the latter often travel more slowly than other traffic, may be too wide and overlap the centerline thus obstructing the view of other motorists, and usually have inadequate safety devices such as lights and signals which are required to be used by other motor vehicles.
On the other hand, the Legislature also could have assumed that the owners of other non-stationary property such as farm animals or trains which may sustain damages in a motor vehicle accident on a public highway are usually not at fault and thus should not be required to maintain their own insurance to cover fortuitous accidents which might occur. Drawing the line to provide property damage insurance coverage for these types of non-stationary property results in a reasonable classification which serves the Legislature's objective of keeping insurance costs down by requiring tangible non-stationary property which is more likely to be in an accident and to bear some responsibility for that accident to carry its own insurance. See Shavers, supra, pp 630-632. We find that no violation of equal protection results from our conclusion that farm tractors are excluded from property damage protection coverage under § 3123(1)(a).
The judgment of the Court of Appeals is affirmed.
WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, BRICKLEY, and BOYLE, JJ., concurred with CAVANAGH, J.