*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARON CALL and JAMES CALL,

        Plaintiffs,

and

FRANKENMUTH INSURANCE COMPANY,

        Intervening Plaintiff-Appellant,

v

L & KJ ENTERPRISES, LLC, d/b/a FAMILY TIRE SERVICE OF MANISTEE,

        Defendant-Appellee.

FOR PUBLICATION
November 18, 2025
3:50 PM

No. 366229
Manistee Circuit Court
LC No. 20-17090-NO

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

Plaintiffs, Sharon and James Call, suffered injuries when their vehicle came in contact with a tire that had fallen off a vehicle going in the opposite direction. The Calls received hundreds of thousands of dollars in personal protection insurance (PIP) benefits from Frankenmuth Insurance Company (Frankenmuth), which in turn sought recovery of that amount from defendant, L & KJ Enterprises, LLC, d/b/a Family Tire Service of Manistee (Family Tire), asserting that Family Tire improperly secured a tire while rotating the tires on the vehicle. The trial court awarded summary disposition to Family Tire under MCR 2.116(C)(8), concluding that Frankenmuth's claim against Family Tire is barred by MCL 500.3116(2). That ruling was consistent with this Court's opinion in *Citizens Ins Co v Pezzani & Reid Equip Co, Inc (On Remand)*, 202 Mich App 278; 507 NW2d 833 (1993), so we must affirm the decision. But if we were not bound by *Pezzani*, we would reach the opposite result because we believe *Pezzani* was wrongly decided, so we call for the convening of a special panel in accordance with MCR 7.215(J)(3) to consider whether *Pezzani* was correct in affording preclusive effect to MCL 500.3116(2) to bar a claim against a nonmotorist tortfeasor.

-1-

## I. FACTUAL BACKGROUND

James Call was driving his car and Sharon Call was riding in the front passenger seat when their vehicle ran into a tire that had fallen off a vehicle that was traveling in the opposite direction. The Calls' vehicle drove over the tire, causing the vehicle to go up into the air. The tire had fallen off a vehicle driven by Deborah Dale, who had just picked up her car from Family Tire, which had rotated the tires on Dale's car. Dale had driven approximately one mile from Family Tire when the tire fell off. As a result of the collision, the Calls suffered serious injuries and then sued Family Tire seeking compensation for their injuries on a theory of common-law negligence.

Frankenmuth moved to intervene in the case as subrogee of plaintiffs, asserting that it was the Calls' automobile insurer and had paid PIP benefits of $381,760.17 on plaintiffs' behalf due to the collision. Frankenmuth sought to recover damages from Family Tire because Family Tire was a nonmotorist tortfeasor. Family Tire objected, arguing that MCL 500.3116 barred Frankenmuth from recovering damages on a subrogation claim, so it would be improper to permit Frankenmuth to intervene in the case on the eve of trial. Frankenmuth responded that Family Tire would not be prejudiced by Frankenmuth's intervention and Family Tire misconstrued MCL 500.3116 because that statute only applies to actions in which an insurer is seeking reimbursement from its insured's third-party tort recovery. The trial court granted Frankenmuth's request to intervene, holding that intervention would not cause undue delay or prejudice. But the trial court's opinion and order did not address whether MCL 500.3116 precluded Frankenmuth from asserting a claim against Family Tire. Frankenmuth thereafter filed a complaint asserting a negligence claim against Family Tire.

Family Tire then moved for summary disposition under MCR 2.116(C)(8), claiming that Frankenmuth's subrogation claim was barred by MCL 500.3116. Family Tire asserted that, under that statute, subrogation is only available in situations that do not exist in this case. Frankenmuth opposed Family Tire's summary disposition motion, insisting that MCL 500.3116 only addresses a no-fault insurer's right to pursue reimbursement from its insured, so the statute does not apply to recoveries an insured would have against a nonmotorist tortfeasor. In reply, Family Tire contested Frankenmuth's argument that MCL 500.3116(2) only applies to reimbursement from the insured, citing this Court's opinion in *Pezzani*, 202 Mich App at 280, to support its argument. Family Tire further contended that Frankenmuth must abide by the no-fault act by abstaining from pursuing a common-law negligence claim.

Following oral argument, the trial court issued a written opinion and order granting Family Tire summary disposition and dismissing Frankenmuth's claim. The trial court decided that MCL 500.3116 barred Frankenmuth's claim, which did not allege any of the three enumerated situations that would permit recovery of benefits under that statute. Frankenmuth moved for reconsideration, but the trial court denied that motion. This appeal of right followed.

## II. LEGAL ANALYSIS

The sole issue on appeal is whether the trial court properly interpreted MCL 500.3116(2) when it decided that that statute precluded Frankenmuth's subrogation claim against Family Tire. Frankenmuth argues that the statute does not bar its claim, so the trial court erred when it dismissed that claim under MCR 2.116(C)(8). "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665

(2019). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. A motion under MCR 2.116(C)(8) may be granted if "a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160.

Under MCL 500.3116(1), "[a] subtraction from [PIP] benefits must not be made because of the value of a claim in tort based on the same accidental bodily injury." But MCL 500.3116(2) provides that "[a] subtraction from or reimbursement for [PIP] benefits paid or payable under this chapter may be made . . . if recovery is realized on a tort claim" and (1) the tort claim arose "from an accident that occurred outside this state," (2) the tort claim was "brought in this state against the owner or operator of a motor vehicle with respect to which the security required by section 3101 was not in effect," or (3) the tort claim was "brought in this state based on intentionally caused harm to persons or property[.]" MCL 500.3116(2). In all those circumstances, subtraction or reimbursement "may be made . . . to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive [PIP] benefits." *Id*. If PIP benefits have already been paid, "the claimant shall repay to the insurers out of the recovery an amount equal to the benefits received, but not more than the recovery exclusive of reasonable attorney fees and other reasonable expenses incurred in effecting the recovery." *Id*.

In 1993, this Court issued a published opinion that discussed MCL 500.3116. *Pezzani*, 202 Mich App 278. There, the plaintiff was a no-fault insurer, which paid property protection benefits to its insured after a motor vehicle accident. *Id*. at 279. The insurer brought a claim as subrogee of its insured seeking damages from several defendants based on a theory of products liability. *Id*. This Court ruled that MCL 500.3116 "essentially limits a no-fault insurer's right to reimbursement to recoveries from motorist tortfeasors or for intentional torts." *Id*. at 280. This Court stated that the insurer's subrogation claim was barred by MCL 500.3116 because none "of the circumstances that allow reimbursement under § 3116 are involved in this case[,]" i.e., the collision "at issue did not occur out of state or involve either an uninsured motorist or an intentional tort." *Id*.

In the 32 years since *Pezzani* was issued, it has rarely been cited as authority in the opinions of this Court, although it was discussed in two unpublished opinions. *McCarthy v Mich Dep't of Transp (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued April 4, 1997 (Docket No. 198951); *Grange Ins Co of Mich v Benteler Auto Corp*, unpublished per curiam opinion of the Court of Appeals, issued June 22, 2017 (Docket No. 331082). In *McCarthy*, this Court rejected the plaintiff's claim that *Pezzani* was incorrectly decided and described *Pezzani* as "precedentially binding," but it did not explain why the plaintiff contended that " 'the *Pezzani* case is absolutely incorrect . . . .' " *McCarthy*, unpub op at 3. In a concurring opinion, however, Judge TAYLOR criticized *Pezzani* for failing to distinguish between motorist tortfeasors and nonmotorist tortfeasors. *McCarthy*, unpub op at 3 (TAYLOR, J., concurring).

In *Grange*, the insureds were involved in a collision purportedly caused by a defective axle manufactured by one defendant and installed by another defendant. *Grange*, unpub op at 1. The insurer provided the insureds a substantial amount in PIP benefits. *Id*. at 1-2. Then the insurer, as subrogee of the insureds, filed suit against the defendants, advancing claims of negligence, breach of express and implied warranties, and violation of the Michigan Consumer Protection Act. *Id*. at 2. The insurer argued that MCL 500.3116 only applies when a no-fault insurer claims a lien in its insured's third-party tort recovery against a tortfeasor. *Id*. Because the insurer filed a

subrogation action standing in the shoes of its insured, it reasoned that MCL 500.3116 did not apply. *Id*. The trial court dismissed those claims under MCR 2.116(C)(8) because they did not state a claim on which relief could be granted. *Id*. Relying on *Pezzani*, this Court decided that the insurer's subrogation claims were governed by MCL 500.3116(2), so they failed as a matter of law because they did not fall within any of the three situations described in the statute. *Id*. at 3-4. That is, the collision "did not occur out of state or involve either an uninsured motorist or an intentional tort." See *Pezzani*, 202 Mich App at 280.

Here, Frankenmuth does not dispute that none of the three exceptions in MCL 500.3116(2) applies. Therefore, if the statute governs the outcome of this case, Frankenmuth's claim is barred. But the language of MCL 500.3116(2) lends support to Frankenmuth's contention that the statute applies only when an insurer attempts to recover money from its insured. The phrase "subtraction from" in MCL 500.3116(2) clearly refers to an insurer decreasing the amount it would be obligated to pay to its insured on the basis of a recovery that the insured obtained from a third party. Further, MCL 500.3116(2) addresses "reimbursement," explaining that "reimbursement for [PIP] benefits . . . may be made only to the extent that the recovery realized by the claimant is for damages for which the claimant has received or would otherwise be entitled to receive [PIP] benefits." MCL 500.3116(2). That statutory language—and specifically the reference to "the recovery realized by the claimant"—supports Frankenmuth's theory that the statute applies only to situations where an insurer seeks reimbursement from its insured. The statute decrees that if PIP benefits "have already been received, *the claimant shall repay to the insurers out of the recovery* an amount equal to the benefits received, but *not more than the recovery* exclusive of reasonable attorney fees and other reasonable expenses incurred in effecting the recovery." *Id*. (emphasis added). That language suggests that MCL 500.3116(2) only applies to subtraction from PIP benefits paid to an insured or reimbursement from the insured after PIP benefits are received if and when that insured realizes a recovery.

Frankenmuth recognizes that, despite the sparse analysis in *Pezzani*, 202 Mich App at 280, the published opinion in *Pezzani* "offers some support for the circuit court's decision in this case." But Frankenmuth aptly characterizes the *Pezzani* opinion as "confused and confusing," and argues that *Pezzani* "misstat[ed] the impact of § 3116" and also "failed to address the relevant preliminary question . . . whether § 3116 even applied" to the case. Similarly, Judge TAYLOR commented that "[w]hile [*Pezzani*] treats motorist and nonmotorist tortfeasors the same, it is devoid of analysis." *McCarthy*, unpub op at 3 (TAYLOR, J., concurring). Filling out the reasoning that should have led to a different result in *Pezzani*, Judge TAYLOR explained:

> [T]he policy to prevent set-off with a motorist tortfeasor (to eliminate motorist versus motorist tort litigation which was the impetus for the no-fault act) is not present with the non-motorist tortfeasor. Further, the prohibition of the set-off provision in the no-fault act would appear to be confined to limiting set-off only in the motorist versus motorist context. The reason for this is that the no-fault act is a self-contained legislative scheme designed to deal with auto tort litigation which suggests that i[t] was never intended to address traditional non-motorist third-party tort actions. [*Id*.]

We are persuaded by the analysis of Judge TAYLOR concerning the inapplicability of MCL 500.3116 to Frankenmuth's claim, but we are bound to apply the contrary holding in *Pezzani*, 202

-4-

Mich App at 280, even though it is "devoid of analysis." *McCarthy*, unpub op at 3 (TAYLOR, J., concurring). Thus, relying on the holding in *Pezzani* as we must, see MCR 7.215(J)(1), we affirm the trial court's summary disposition award to Family Tire under MCR 2.116(C)(8).[1] But we call for the convening of a special panel pursuant to MCR 7.215(J)(3) to consider whether the holding in *Pezzani* should remain binding authority for interpreting the language of MCL 500.3116(2) to preclude common-law negligence claims against nonmotorist tortfeasors.

      Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates

---

[1] Frankenmuth contends that this Court need not follow *Pezzani* because it is incongruent with decisions of our Supreme Court. Specifically, Frankenmuth insists that we must follow our Supreme Court's opinion in *Bronner v Detroit*, 507 Mich 158; 968 NW2d 310 (2021). In *Bronner*, our Supreme Court characterized MCL 500.3116 as applicable when "the insurer is reducing its liability to (or recovering from) *its beneficiaries*." *Id*. at 175. Our Supreme Court noted in *Bronner* that, "by providing a limited avenue by which a no-fault insurer can offset its liability to its own beneficiary, [MCL 500.3116] implicitly denies other options at recovering from a beneficiary and confirms the no-fault system's focus on the relationship between insurers and their insureds and beneficiaries—*not* the relationship between insurers and their vendors." *Id*. Those passages seem to reflect our Supreme Court's belief that MCL 500.3116 only applies to reimbursement from an insurer's own insured. But our Supreme Court in *Bronner* was merely considering whether an indemnification agreement in an insurance contract was void because it ran afoul of the purpose of the no-fault act. *Id*. at 165. Its discussion of MCL 500.3116 was simply one example used to illustrate the point that it made about the validity of the indemnification agreement. *Id*. at 175. Consequently, the discussion about MCL 500.3116 in *Bronner* does not have any precedential value. *Wold Architects and Engineers v Strat*, 474 Mich 223, 232 n 3; 713 NW2d 750 (2006) (explaining that "[s]tatements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but obiter dicta and lack the force of an adjudication"). Accordingly, we must reject Frankenmuth's invitation to eschew the precedent in *Pezzani* in favor of *Bronner*.